UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY G. WILLIAMS, | ) | CASE NO. 3:18-cv-1303 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kimberly G. Williams (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On March 3, 2015, Plaintiff filed her applications for SSI, alleging a disability onset date of

March 3, 2015.[1] (Transcript ("Tr.") 194-199). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 124-137). Plaintiff participated in the hearing on June 21, 2017, was represented by counsel, and testified. (Tr. 26-65). A vocational expert ("VE") also participated and testified. *Id*. On October 2, 2017, the ALJ found Plaintiff not disabled. (Tr. 21). On April 13, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5). On June 7, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 12).

Plaintiff asserts the following assignment of error: (1) whether the application of Acquiescence Ruling 98-4(6) and ensuing adoption of the mental limitations contained in a prior administrative decision is supported by substantial evidence. (R. 10, PageID# 573).

## II. Evidence

**A. Relevant Medical Evidence**[2]

**1. Treatment Records**

On January 7, 2015, Plaintiff was seen for a follow up by Carlos G. Lowell, D.O. (Tr. 354-355). Plaintiff reported that her psychiatric symptoms were overall stable, but reported being upset because she lent some family members money, but they did not pay it back. (Tr. 354). She also reported diminished sleep with a lower dose of Remeron. *Id*. She also reported being sober.

---

[1] Plaintiff had a previous application for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and SSI denied on November 22, 2013. (Tr. 69-84).

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

*Id*. Dr. Lowell concluded Plaintiff's bipolar disorder and polysubstance dependence were relatively stable, and continued her Seroquel prescription unchanged, but increased her Remeron dosage. *Id*.

On September 22, 2015, Plaintiff complained of depression and anxiety to Carol Krieger, PMHCNS.[3] (Tr. 357). She further reported shakiness, racing thoughts, difficulty with concentration, sadness, and anxiety attacks causing her to isolate. *Id*. She reported drinking pop, a pot of coffee, and smoking two packs of cigarettes per day. *Id*.

On October 13, 2015, Plaintiff reported that her medications were working, and she was sleeping better. (Tr. 359). She reported reducing her caffeine and alcohol intake. *Id*.

On March 22, 2016, Plaintiff reported to nurse Krieger that she was stable on medications without side effects. (Tr. 447). Her medications were continued unchanged. *Id*.

On May 9, 2016, Plaintiff underwent a court ordered alcohol and drug (AOD) assessment after being charged with possession of marijuana and paraphernalia in April of 2016. (Tr. 449). Plaintiff has tested positive for morphine, and she admitted taking non-prescription Vicodin. *Id*. She identified herself as an alcoholic, but asserted that her daily drinking has been reduced to only six drinks in the past several months. *Id*. Plaintiff reported currently taking Wellbutrin, Seroquel, and Remeron as prescribed by nurse Krieger. *Id*. She reported "doing well other than getting depressed about her money situation. Reports she has been waiting on disability for several years which upsets her." *Id*. She further reported episodes of crying, disliking being around others, difficulty trusting others, difficulty concentrating, scattered thoughts, and constant worrying. (Tr. 449-450). The counselor referred Plaintiff for group and individual counseling.

---

[3] Psychiatric and Mental Health Clinical Nurse Specialist.

(Tr. 453).

On May 17, 2016, Plaintiff reported being unable to sleep. (Tr. 455). On mental status examination, Plaintiff was adequately groomed, alert and oriented x 3, had clear speech, relevant associations, adequate recent and remote memory, varied thoughts, fair insight and judgment, fair attention/concentration, no suicidal or homicidal ideation, and no psychotic symptoms. (Tr. 455).

On June 9, 2016, Plaintiff was a "no show" for group counseling and reported that she is "not going to go to group counseling for 6 months for something I didn't even do. I am just going to do my 30 days in jail." (Tr. 465). Plaintiff indicated that she was not interested in continuing services as she did not feel she needed treatment. *Id*.

On September 6, 2016, Plaintiff was seen by nurse Krieger and stated that she felt stable on her present medications without side effects, which she wanted to continue unchanged. (Tr. 467). Her medications remained unchanged. *Id*.

On November 15, 2016, Plaintiff reported racing thoughts, increased anxiety, and a reduction in her ability to concentrate and focus. (Tr. 469). Her prescription for Seroquel was increased for her daytime racing thoughts. *Id*.

On December 27, 2016, Plaintiff reported not sleeping at night due to racing thoughts, irritability, and mood instability. (Tr. 471). It was noted that Plaintiff's insurer, Buckeye, may have refused to fill Plaintiff's Seroquel prescription due to the manner in which it was written. *Id*. On mental status examination, Plaintiff was alert and oriented x 3, had clear speech, relevant associations, adequate recent and remote memory, varied thoughts, fair insight and judgment, fair concentration/attention, and no psychotic symptoms. *Id*.

On January 24, 2017, Plaintiff reported doing well on her present medications, including

4

sleeping well. (Tr. 473). Nurse Krieger opined that overall Plaintiff was stable and her medications were continued unchanged. (Tr. 473).

### 2. Opinions Concerning Plaintiff's Functional Limitations

On August 26, 2015 and August 31, 2015, State Agency physician Leanne M. Bertani, M.D., and psychologist Joseph Edwards, Ph.D., respectively noted that Plaintiff alleged depression, anxiety, and COPD, but that her conditions could not be evaluated due to Plaintiff's failure to attend two scheduled examinations. (Tr. 97-98).

On January 11, 2016, Plaintiff underwent a consultative examination performed by Wayne Morse, Ph.D. (Tr. 368-373). Plaintiff took public transportation to attend the evaluation. (Tr. 368). Plaintiff was diagnosed with Bipolar I Disorder, most recent episode manic, severe without mood congruent psychotic features; Social Phobia; Posttraumatic Stress Disorder (Chronic); Dissociative Disorder (Not Otherwise Specified); and Learning Disorder (Not Otherwise Specified). (Tr. 371). In terms of Plaintiff's abilities in understanding, remembering, and carrying out instructions, Dr. Morse opined that "[t]he evidence (self-report of great difficulty with her memory functioning, poor performance on the memory tasks, learning problems, and unstable work history), suggested that she would have considerable difficulty understanding and remembering simple instructions in an unskilled work setting." (Tr. 372). With regard to Plaintiff's abilities to maintain concentration, persistence and pace, Dr. Morse opined that "[t]he evidence (self-report of difficulty with her concentration, poor performance on the attention tasks, disorganized speech, and unstable work history), suggested that the claimant would have considerable difficulty carrying out simple instructions, performing concrete multi-step tasks at a consistent pace, and responding well to changes in an unskilled work setting." *Id*. With respect to Plaintiff's ability to respond appropriately to supervision and coworkers, Dr. Morse opined that

5

"The evidence (self-report of great difficulty in relationships, difficulty controlling her anger in work situations, paranoid delusions, and unstable work history), suggested that the claimant would have considerable difficulty interacting appropriately with the general public, working in coordination with others, and responding appropriately to criticism from supervisors. She is able to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." *Id*. Finally, Dr. Morse opined on Plaintiff's abilities to respond appropriately to work pressures by stating: "The evidence (great difficulty taking direction in work situations, unstable job history, and difficulty controlling her anger), suggested that she has a poor ability to respond to work pressures. She would have considerable difficulty setting realistic goals independently of others, engaging in activities without supervision, adjusting to changes in the work environment, and managing normal everyday work pressures." (Tr. 373).

On January 28, 2016, State Agency psychologist Judith Schwartzman, Psy.D., completed a mental RFC assessment finding that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions but could understand, remember and perform one to two-step tasks. (Tr. 114). In the area of concentration and persistence, Dr. Schwartzman assessed a number of moderate limitations, concluding that "[claimant] can perform 1-2 step tasks. When symptoms increase, she will occasionally need flexibility in work schedule, taking breaks, and pacing. She will also benefit from intermittent supervision to assure she completes tasks accurately and occasionally and will perform best working alone or with a small group of peers well-known to her." (Tr. 114-115). In the area of social interaction, Dr. Schwartzman found Plaintiff was moderately limited in her ability to interact appropriately with the general public and in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 115). She explained that: "[Claimant] should work in a non-public position,

6

preferably alone or with a small number of coworkers who are well-known to her. Interactions with coworkers and supervisors should be infrequent, brief, and superficial. Supervisors will need to be available for occasional clarification of task requirements and will need to offer constructive criticism." *Id*. In the area of adaptation, Dr. Schwartzman found Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (Tr. 115-116). She explained that: "Clt will need advance notice of major changes and a gradual implementation to allow her time to adjust. She can use public transportation as this is how she arrived at 01/16 psych CE. Supervisors will need to assist clt in planning work and setting realistic goals." (Tr. 116).

On April 4, 2017, nurse Krieger completed a checklist assessment of Plaintiff's mental RFC. (Tr. 475-477). She reported seeing Plaintiff eleven times between September 22, 2015 and April 4, 2017. (Tr. 475). She set forth Plaintiff's diagnoses as major depressive disorder with history of psychosis and generalized anxiety disorder. *Id*. Nurse Krieger checked a box indicating Plaintiff would experience severe symptoms 20 to 25 percent of the day that would interfere with Plaintiff's ability to attend and concentrate on simple tasks. *Id*. Nurse Krieger checked boxes denoting marked limitations[4] in Plaintiff's abilities in the following areas: understanding and remembering very short and simple instructions; maintaining attention and concentration for extended periods; completing a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding

---

[4] The form does not define any of the choices provided for the individual completing the form; and the choices are confined to the following: "not significantly limited;" "moderately limited;" "markedly limited," and "extremely limited." (Tr. 475-477).

7

appropriately to criticism from supervisors; responding appropriately to changes in the work setting; and, set realistic goals or make plans independently of others. (Tr. 476-477). Nurse Krieger provided no comments in support of her assessment. (Tr. 477).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 3, 2015, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: major depressive disorder; generalized anxiety disorder; lumbar spondylosis; and chronic obstructive pulmonary disease (COPD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; 30 minutes of walking at one time; occasional kneeling, stooping, crouching, and crawling; avoidance of all exposure to hazards such as moving machinery and unprotected heights; no commercial driving; only occasional exposure to fumes, odors, dusts, gases and poor ventilation; limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and involving only work related decisions with few, if any, work place changes; no interaction with the public; and only occasional interaction with coworkers and supervisors.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on ***, 1971 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

9

> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since March 3, 2015, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-21).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

Plaintiff's sole assignment of error argues the ALJ should not have applied Acquiescence Ruling ("AR") 98-4(6) and adopted a prior decision's RFC, because there was new and material evidence that her mental condition has deteriorated. (R. 10, PageID# 583-586). As stated above, the mental component of the RFC included significant limitations, restricting Plaintiff "to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and involving only work related decisions with few, if any, work place changes; no interaction with the public; and only occasional interaction with coworkers and supervisors." (Tr. 15). The Commissioner counters that the ALJ "reasonably determined that the record evidence related to Plaintiff's mental health did not demonstrate new and material changes since the prior unfavorable decision in 2013." (R. 12, PageID# 596). In addition, the Commissioner avers that the ALJ's decision does not run afoul of the Sixth Circuit's recent decision in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), which ostensibly clarified a prior ruling, *Drummond v. Comm'r Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), upon which AR 98-4(6) is based.

Another district court's decision within the Sixth Circuit has effectively summarized the issue and the state of the law since the *Earley* decision.

> About twenty years ago, the Sixth Circuit held that the "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (1997). The Social Security Administration then issued an Acquiescence Ruling on *Drummond*:
>
> > When adjudicating a subsequent disability claim with an adjudicated period

11

> arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim ... unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

[A.R.] 98-4(6), [*Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*,] 1998 WL 283902 (June 1, 1998).

Recently, however, the Sixth Circuit clarified the meaning of *Drummond*. In *Earley*, a Social Security Administration ALJ had thought *Drummond* precluded him from revisiting an earlier finding that the claimant was not disabled unless she offered new and material evidence of a changed condition. *Earley*, 893 F.3d at 931. But "[t]hat is not how it works." *Id.* at 932. Rather, the Sixth Circuit explained, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory condition." *Id.*

Courts applying *Earley* to litigation that arose before that case have asked whether the ALJ, despite following *Drummond*, gave the new evidence a fresh look. If so, then the ALJ's decision satisfied the mandates of *Earley*; if not, then remand was appropriate. *See Dugan v. Comm'r of Soc. Sec.*, ––– F. App'x –––, 2018 WL 2769401 (6th Cir. 2018) (post-*Earley* Sixth Circuit decision finding ALJ pre-*Earley* appropriately considered administrative *res judicata* where she ultimately found new and material evidence of medical improvement meant she was not bound by a prior ALJ's determination); *Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 WL 4403418, at *2–3 (E.D. Mich. Sept. 17, 2018) (overruling objection and adopting R&R affirming Commissioner where ALJ had issued decision pre-*Earley* but still conducted an independent review of the evidence and did not simply adopt prior ALJ's findings wholesale); *Kimball v. Comm'r of Soc. Sec.*, No. 17-12659, 2018 WL 4102845, at *5 n. 4 (E.D. Mich. Aug. 7, 2018) (finding *Earley* did not change its analysis of pre-*Earley* ALJ decision because ALJ had concluded she was not bound by the previous RFC due to new and material evidence), *rep. & rec. adopted*, 2018 WL 4095081 (Aug. 28, 2016). *Cf. Seabolt v. Berryhill*, No. 3:17-CV-470, 2018 WL 3545382, at *3 at n. 4 (N.D. Ind. July 23, 2016) (finding that "*Earley* had not been decided when the ALJ opined on Seabolt's case and therefore does not control this Court's analysis of the ALJ's decision").

*Rutledge v. Comm'r of Soc. Sec.*, No. 17-CV-13651, 2019 WL 1465354, at *10 (E.D. Mich. Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 948763 (E.D. Mich. Feb. 27, 2019);

12

*see also Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *4 (E.D. Tenn. May 10, 2019) ("Since *Earley* was decided, courts 'have asked whether the ALJ, despite purporting to follow *Drummond*, gave the new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand was appropriate.'"); *Bawkey v. Comm'r of Soc. Sec.*, No. 1:17-CV-1068, 2019 WL 1052191, at *4 (W.D. Mich. Feb. 6, 2019), *report and recommendation adopted*, 2019 WL 1044448 (W.D. Mich. Mar. 5, 2019) (finding that the ALJ's decision "was consistent with principles set forth by the Sixth Circuit in *Earley*" when it reviewed the plaintiff's condition as it existed *after* the time frame addressed in the earlier decision); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted*, 2019 WL 1125759 (S.D. Ohio Mar. 12, 2019) ("Because ALJ Nguyen gave a 'fresh look' to the new evidence, a remand under *Earley* is not warranted"); *Kamphaus v. Comm'r of Soc. Sec.*, No. 2:17-CV-11828, 2018 WL 3800243, at *5 (E.D. Mich. July 23, 2018), *report and recommendation adopted*, 2018 WL 3770045 (E.D. Mich. Aug. 8, 2018) (finding "that [the] ALJ did not simply apply *res judicata* principles and adopt [the previous] ALJ['s] findings 'lock, stock and barrel,' but, instead, gave new consideration and analysis" to the new evidence); *cf. Amburgey v. Comm'r of Soc. Sec.*, 751 Fed. App'x 851, 861–62 (6th Cir. 2018) (finding no *Drummond* issue was presented post-*Early* because the second ALJ's decision "relied on an extensive body of evidence collected after the decision denying Plaintiff's first application.")

The ALJ's decision was rendered on October 2, 2017, prior to the Sixth Circuit's *Earley* decision in 2018. Therefore, based on the above-cited caselaw, a remand is not mandated by the mere fact that the ALJ followed the dictates of *Drummond* or the ensuing AR 98-4(6) adopted by the Social Security Administration. Rather, the question before this court is whether the ALJ

13

conducted an independent review of the new evidence from the time period concerning the newly filed claim, or as phrased by the *Rutledge* decision, whether she "gave the new evidence a fresh look." 2019 WL 1465354, at *10.

A fair-minded reading of the decision shows the ALJ already considered the new evidence, but did not believe that the treatment records demonstrated any deterioration in Plaintiff's mental conditions. With respect to the mental aspect of the RFC at issue here, the current decision cannot reasonably be characterized as adopting the prior unfavorable decision's findings wholesale without consideration of the new evidence. For example, the ALJ discussed the treatment notes from numerous mental health visits stemming from the new claim period in 2014 and 2015. (Tr. 17). The ALJ also discussed a mental health visit from March of 2016, a court-ordered AOD assessment from May of 2016 (Tr. 17), and Plaintiff's decision to decline group therapy sessions and opting to serve thirty days of jail-time instead. (Tr. 18).

Despite protesting the ALJ's finding that Plaintiff's mental health status had not deteriorated materially since the previous unfavorable decision, Plaintiff makes no meaningful attempt to compare her remote mental health treatment records with the same from the new time period. Instead, Plaintiff relies primarily on the opinion evidence from three separate non-treating sources from the new time period—consultative examiner Dr. Morse, State Agency psychologist Dr. Schwartzman, and nurse Krieger. (R. 10, PageID# 584-586). However, the ALJ clearly and unambiguously addressed each one of these three opinions in three separate paragraphs of the decision, and explained why she accorded those opinions little weight.[5]

---

[5] None of the three new opinions identified by Plaintiff are subject to the rigors of the treating physician rule. In fact, nurses and nurse practitioners are not considered "acceptable medical source" under the pertinent regulations in effect when the claim was filed, and, therefore, an ALJ is not required to give any special deference to statements from a nurse practitioner. *Noto v.*

Because it is apparent the ALJ took a fresh look at the new evidence accruing from the time-period post-dating the prior unfavorable decision, the ALJ's decision to adopt the same mental restrictions as existed in the prior RFC did not offend any of the principles set forth in *Earley*.

While Plaintiff takes issue with the reasons provided in the ALJ's explanation for according those opinions little weight, Plaintiff has not identified any basis for a remand. It is true that when crafting an RFC assessment, the ALJ "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added). Further, state agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 416.913a(b)(1); 416.927(e). ALJs, however, are not automatically bound by such opinions, but they "may not ignore [them] and must explain the weight given to the opinions in their decisions." *Edwards ex rel. L.T. v. Colvin*, No. 12-C-7639, 2013 U.S. Dist. LEXIS 106104, 2013 WL 3934228, at *4 (N.D. Ill. July 30, 2013) (quoting SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180); *see also Johnson v. Astrue*, No. 1:09CV2959, 2010 U.S. Dist. LEXIS 137362, 2010

---

*Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Engebrecht v. Commissioner*, 572 Fed. Appx. 392, 397-398 (6th Cir. 2014)); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007)).

WL 5559542, at *5 (N.D. Ohio Dec. 3, 2010) (same).[6]

Given the above, the ALJ was certainly required to consider and explain the weight given to the opinions of Drs. Morse and Schwartzman, as well as nurse Krieger. The ALJ did not ignore these opinions or merely mention them in passing, but explained why she did not believe they were entitled to great weight. The decision addressed the opinions as follows:

> Mental health nurse practitioner Carol Krieger, PMHCNS, submitted a statement in April of 2017, reporting that the claimant was unable to sustain an eight-hour workday, and would be off-task 20-25% of the day (Ex. B11F). She opined that the claimant had marked limitation in understanding and remembering short and simple instructions, maintaining attention and concentration for extended periods, performing within a schedule, completing a normal workday/week without interruption from symptoms, accepting instructions and criticisms, responding to workplace changes, and setting realistic goals (Ex. B11F). Moderate limitations were opined in all other areas of work-related functioning, aside from maintaining socially appropriate behavior (Ex. B11F). The record does not support limitations to the extent opined by Ms. Krieger, including her treatment records of the claimant, which showed that the claimant's symptoms generally responded well to medications, with corresponding changes in mental status examinations (*See*: B1F/1; B5F/7; B1OF/25, 29). Accordingly, these opinions are given little weight.
>
> Psychological consultative examiner Wayne Morse, Ph.D., opined that the claimant's self-reported symptoms would cause "considerable difficulty understanding and remembering simple instructions for unskilled work, carrying out simple instructions, performing at a consistent pace, responding well to changes, interacting with the public, working in coordination with others, responding to criticism, adjusting to workplace changes, and managing everyday work pressures (Ex. B6F). These opinions, as noted in the supporting narrative, were based heavily upon the claimant's subjective reports of symptoms, which were inconsistent with the record as a whole regarding her mental impairments. While she alleged continued and significant symptoms in all areas of work-related functioning to this examiner, she reported to treating providers throughout the record that her medications were generally effective, with mental status examinations showing few aberrant findings. It is accordingly given less weight.
>
> State agency psychological consultants opined that the claimant was able to

---

[6] The explanation requirements for "other sources," such as nurse practitioners, are similar. *See, e.g., Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'")

16

> understand, remember, and perform one- to two-step tasks, occasional flexibility in schedule, breaks, and pacing, with intermittent supervision, in a non-public position, preferably alone or with a small group of peers well-known to her, with advance notice of major changes and gradual implementation (Ex. B4A). Many of the limitations provided by this consultant were not in vocationally relevant terms. Additionally, the record does not support that the claimant's mental impairments demonstrated new and material changes since the prior decision. Accordingly, AR 98-4(6) applies, and the prior mental limitations have been adopted.

(Tr. 18-19).

Plaintiff fails to identify any deficiency in the ALJ's explanations that warrant a remand under the applicable rulings and regulations. Plaintiff asserts that the treatment notes of record "support, rather than detract, from both Dr. Morse'[s] and Ms. Krieger's assessments," but such assertions, without more, do not provide a basis for remand. (R. 10, PageID# 586). To the extent Plaintiff takes issue with the ALJ's interpretation of the evidence or suggests that the evidence should be construed differently, such an argument is tantamount to an invitation for this court to reweigh the evidence and to assign greater weight to the disputed opinions. In other words, Plaintiff does not argue that the decision failed to *explain* why less weight was given to the three opinions in question. Instead, Plaintiff's brief essentially argues that the reasons set forth in the explanation are not good reasons or involve an interpretation of the record with which she disagrees. Where there are conflicting opinions resulting from essentially the same medical data, it is the responsibility of the ALJ to resolve those conflicts. *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC). Further, this court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11

17

(E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or *decide questions of credibility*." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (*quoting Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

Because the explanation requirement for non-treating or other source opinions is not the equivalent of the treating physician rule, which applies only to *acceptable medical sources* that treated a claimant, the court finds no deficiency with the level of explanation the ALJ provided. Plaintiff's objection to the ALJ's explanation does not provide a basis for remand, nor will the court expand the explanation requirement to the more rigorous treating physician standard. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at \*\*3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). Mere disagreement with the ALJ's rationale does not provide a basis for remand.

Therefore, the court finds Plaintiff's sole assignment of error to be without merit.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

                                                   s/ *David A. Ruiz*
                                                   David A. Ruiz
                                                   United States Magistrate Judge

Date: July 9, 2019

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**